# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2023-0164, <u>M.B. v. R.B.</u>, the court on September 1, 2023, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The defendant, R.B., appeals the order of the Circuit Court (<u>Chabot</u>, J.), following a hearing, granting a domestic violence final order of protection to the plaintiff, M.B. <u>See</u> RSA 173-B:5 (2022). He argues that the trial court erred by finding that: (1) he committed acts of "abuse" by damaging the marital home and leaving a newspaper in a conspicuous location for the plaintiff to find upon entry; and (2) his conduct constituted a present credible threat to the plaintiff's safety. He also argues that the court erred in ordering him to pay $545.96 in compensation to the plaintiff. We affirm.

To be granted a domestic violence final order of protection, the plaintiff must establish, by a preponderance of evidence, that the defendant engaged in "abuse." RSA 173-B:5, I. "Abuse" means the commission or attempted commission of one or more enumerated crimes by a family or household member or a current or former sexual or intimate partner when such conduct "constitute[s] a credible present threat" to the plaintiff's safety. RSA 173-B:1, I (2022); <u>see</u> S.C. v. G.C., 175 N.H. 158, 163 (2022). The enumerated crimes that may constitute abuse include "[d]estruction of property as defined in RSA 634:1 and RSA 632:2." <u>See</u> RSA 173-B:1, I(e).

The trial court's "findings of facts shall be final, but questions of law may be transferred from the circuit court to the supreme court." RSA 173-B:3, VI (2022). We review sufficiency of the evidence claims as a matter of law, upholding the trial court's findings and rulings unless they lack evidentiary support or are tainted by legal error. <u>S.C.</u>, 175 N.H. at 162. We defer to the trial court's judgments as to the credibility of the witnesses and the weight of their testimony. <u>Id</u>. at 162-63. We view the evidence in the light most favorable to the prevailing party, here, the plaintiff. <u>Id</u>. at 163.

We first address the defendant's argument that the evidence was insufficient to prove that he committed an act of "abuse" by damaging the marital home, which the trial court awarded to the plaintiff in its final divorce decree. He argues that any damage that he caused while in possession of the home was <u>de minimis</u>, and that RSA 173-B:1, I(e) requires more than <u>de minimis</u> damage to support a finding of "abuse."

The trial court found that "[t]he photographs submitted as Plaintiff's Exhibit 1," photocopies of which were provided to us on appeal, "speak volumes to the gross disarray and neglect, including accumulated trash, left by Defendant, largely hidden behind the closed closet doors and cabinet doors depicted in his hurried 'sweeping' video of each room where he claimed to leave the home in a habitable condition." The court inferred "that Defendant's gross neglect of the overall condition of the marital home and surrounding yard, deck, and fence, coupled with minimal maintenance and general housekeeping – during a time which he exclusively had possession of the former marital home – constitutes 'damage' to the value of the property." The court found the cost to clean up the damage to be $3,500 and the cost to service the boiler to be $545.96. Even assuming, without deciding, that RSA 173-B:1, I(e) requires more than de minimis damage, and that the defendant preserved this issue for review, we construe the court's order to find that the defendant's neglect caused more than de minimis damage. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) (interpretation of trial court order presents a question of law for this court). The record supports the court's findings. S.C., 175 N.H. at 162.

The defendant argues that the trial court must make a specific finding of criminal conduct, see Fillmore v. Fillmore, 147 N.H. 283, 285 (2001), and that the court's "amorphous finding" of "gross neglect" does not satisfy this standard. "A person is guilty of criminal mischief who, having no right to do so nor any reasonable basis for belief of having such a right purposely or recklessly damages the property of another." RSA 634:2, I (Supp. 2022). The trial court found that the defendant committed criminal mischief by damaging the marital home, which was awarded to the plaintiff in the final decree. We conclude that the court's findings are sufficient to support its order. See Fillmore, 147 N.H. at 285.

The defendant argues that he should have been given four more weeks to clean the property, remove any trash, and repair any damage before the plaintiff took possession on January 2, 2023. He asserts that the temporary orders awarding him possession of the home remained in effect until January 30, 2023, when this court issued its mandate in his appeal of the final divorce decree. The plaintiff counters that the divorce decree went to final judgment on October 31, 2022. We agree with the plaintiff.

The trial court's August 22, 2022, order denying the defendant's motion to reconsider the divorce decree concluded the proceeding. See Sup. Ct. R. 3 (defining "decision on the merits). Judgment became final on October 31, 2022, when a notice of appeal was not filed within 30 days of the clerk's September 28, 2022 notice of decision. See Sup. Ct. R. 7(1)(A); Fam Div. R. 1.31(A). The defendant did not file his notice of appeal until November 8, 2022. On December 8, 2022, we dismissed the defendant's appeal as untimely, and on January 30, 2023, we denied the defendant's motion for reconsideration

2

and issued our mandate.  Accordingly, the temporary orders ended on October 31, 2022, when final judgment entered.  See Fam. Div. R. 1.31(A).

Even if the temporary orders remained in effect on January 2, 2023, the defendant had no right to damage property in which the plaintiff had an interest.  See RSA 637:2, IV (2016) (defining "property of another").  Moreover, the defendant has failed to demonstrate that he requested more time to repair the damage.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) (to satisfy preservation requirement, appellant must show that he raised his issue in the trial court).  The trial court found that the defendant "flatly denied" damaging the property, suggesting that the condition in which he left the home was "normal wear and tear."

We next address the defendant's argument that even if his conduct was sufficient for a finding of "abuse," it did not constitute a present credible threat to the plaintiff's safety.  In ruling on a domestic violence petition, "[t]he court may consider evidence of such acts, regardless of their proximity in time to the filing of the petition, which, in combination with recent conduct, reflects an ongoing pattern of behavior which reasonably causes or has caused the petitioner to fear for his or her safety or well-being."  RSA 173-B:1, I.

In June 2019, the trial court issued a domestic violence order against the defendant for the protection of the plaintiff, finding that the defendant "[p]ushed the plaintiff; stepped on her hand; held the door to bathroom/laundry room, where she was located, shut so that she could not leave; took the plaintiff's keys and broke her cell phone."  At that time, the court found that the defendant's conduct constituted a credible threat to the plaintiff's safety because, "he was in a rage, yelling at the [p]laintiff, preventing her from leaving the situation and physically assaulting her," and because his behavior had been "escalating."

In June 2020, the trial court, following a hearing, found "good cause" to extend the 2019 protective order for an additional twelve months.  In January 2022, the superior court found the defendant guilty of criminal mischief, finding that his conduct demonstrated "hallmarks of domestic abuse."  In June 2022, the trial court granted the plaintiff's petition for a fault-based divorce, based upon the defendant's extreme cruelty and treatment "seriously to injure health or endanger reason."  RSA 458:7, III, V (Supp. 2022).

At the hearing in this case, when the plaintiff was asked why she felt that a protective order is necessary, she testified:  "I was hopeful that over time, I would see him in a better place and I would feel less afraid of him and it's obviously been the opposite.  I feel more afraid of him."  The plaintiff testified: "I think he's very angry with me.  I think he would hurt me physically.  I think he would hurt me in any way he possibl[y] could."  When asked how she felt

3

when she saw the damage to the marital home, the plaintiff testified that, "[i]t felt very personal, like he had done that in a very vengeful way."

The trial court found that the defendant's conduct constituted a present credible threat to the plaintiff's safety because "it reflects Defendant's continued and dedicated [retaliatory] measures he has taken against Plaintiff for ending their marriage in a protracted[,] high-conflict divorce, resulting in ongoing tension and potential future unpredictable [and] volatile conduct by Defendant if/when faced with unfavorable decisions, court orders[,] and the like." We conclude that the evidence is sufficient to show that the defendant's conduct constitutes a present credible threat to the plaintiff's safety. See S.C., 175 N.H. at 162.

Finally, the defendant argues that the trial court erred in ordering him to compensate the plaintiff in the amount of $545.96 for boiler service. Upon a finding of abuse, the trial court may order the defendant to pay the plaintiff monetary compensation for losses suffered as a direct result of the abuse. RSA 173-B:5, I(b)(9) (2022). The court found that the defendant's "gross neglect of daily homeowner maintenance," resulted in losses to the plaintiff, including $545.96 for the "cost of customary furnace service maintenance/repair neglected by Defendant." The court's order on reconsideration referenced the plumber's $545.96 invoice, which states that the boiler had not been serviced in three years and was "dirty." The court found that the need for the service was a direct result of the defendant's neglect, resulting in damage, which was part of its abuse finding. We conclude that the evidence supports the court's order. See S.C., 175 N.H. at 162.

Having concluded that the evidence is sufficient to show that the defendant's damage to the marital home constitutes a present credible threat to the plaintiff's safety, we need not address his argument that he did not commit an act of "abuse" by leaving in the kitchen a newspaper that contained an article about this court's decision in his favor in the parties' divorce case. See Antosz v. Allain, 163 N.H. 298, 302 (2012) (declining to address appellants' other arguments where holding on one issue is dispositive).

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**